# WILLIAM MAZZIOTTI *v.* ALLSTATE INSURANCE COMPANY
## (15505)

Borden, Berdon, Norcott, Katz and Palmer, Js.

Argued January 21—officially released May 13, 1997

*Linda L. Morkan*, with whom, on the brief, were *Stephen E. Goldman* and *Raymond T. DeMeo*, for the appellant (defendant).

*Stephen B. Alderman*, with whom was *Debra S. Groggins*, for the appellee (plaintiff).

*Joram Hirsch* filed a brief for the Connecticut Trial Lawyers Association as amicus curiae.

*Opinion*

KATZ, J. The dispositive issue in this appeal is whether, in an action by the plaintiff insured to recover damages under the uninsured/underinsured motorist provision of his automobile insurance policy issued by the defendant insurance company, the defendant is bound by the judgment obtained by the insured in his prior action against the tortfeasor. The defendant, Allstate Insurance Company (Allstate), appeals from the judgment of the trial court in favor of the plaintiff, William Mazziotti. Allstate claims that because it was not in privity with the tortfeasor it is not bound by the judgment in the earlier action, and may, therefore, contest the issue of damages in the action brought against it by the plaintiff. We agree.

The following facts are undisputed. On July 15, 1991, the plaintiff, William Mazziotti, while stopped at a red traffic light, was struck by a motor vehicle operated by Bei-Rong Ye. Ye had automobile liability insurance with Patriot General Insurance Company (Patriot General), with a liability limit of $20,000.

On April 8, 1992, the plaintiff filed suit against Ye. In that action, entitled *Mazziotti* v. *Ye,* Superior Court, judicial district of New Haven, Docket No. CV920330855S (June 30, 1993), the plaintiff moved for summary judgment. The motion was granted as to liability only. Thereafter, the plaintiff sought leave to implead Allstate, with whom he had an automobile insurance policy providing uninsured/underinsured motorist coverage with a limit of $100,000, as a party defendant in that action. The purpose of seeking to implead Allstate was to determine its liability under the underinsured motorist coverage provisions of the policy. Although the plaintiff's motion to implead Allstate was granted, he never actually made Allstate a party to that action. On June 30, 1993, after a hearing in damages in the action against Ye, a judgment of $68,867 was rendered for the plaintiff.

On May 27, 1993, thirty-four days before the hearing in damages in the action against Ye, the plaintiff brought the present action against Allstate, seeking coverage under the underinsured motorist provision of his policy. In his complaint, the plaintiff did not refer to his then pending action against Ye. The plaintiff alleged only that he *would* exhaust the full amount of the liability insurance available under Ye's automobile insurance policy.

On October 26, 1993, the plaintiff brought a separate action against Patriot General alleging, inter alia, that, as Ye's insurer, it had acted in bad faith in its dealings with him.[1] *Mazziotti* v. *Patriot General Ins. Co.,* Supe-

---

[1] Specifically, the plaintiff claimed that Patriot General had: "(1) failed, in bad faith, to exercise due care and diligence in dealing with [the] plaintiff in *Mazziotti* v. *Ye* [supra, Superior Court, Docket No. CV920330855S]; (2) failed, in bad faith, to settle Mazziotti's claim against Ye within Patriot General's $20,000 policy limits; (3) failed to satisfy the judgment against Ye; and (4) violated the Connecticut Unfair Insurance Practices Act (CUIPA) [General Statutes § 38a-815 et seq.] and the Connecticut Unfair Trade Practices Act (CUTPA) [General Statutes § 42-110a et seq.]."

rior Court, judicial district of New Haven, Docket No. CV930353278S (withdrawn per release filed February 9, 1995). On February 9, 1995, Patriot General, on behalf of Ye, paid the plaintiff the $20,000 bodily injury liability limit under Ye's policy. On March 14, 1995, the plaintiff filed a satisfaction of the judgment in his action against Ye.[2] Patriot General also paid the plaintiff an additional $20,000 to settle the claims asserted in the separate bad faith action.

In the present action, the plaintiff seeks to collect from Allstate, under the terms of his insurance policy, "those damages which [he] is legally entitled to recover from the owner or operator of an uninsured auto . . . ."[3] There are three other provisions of the insur-

---

[2] The satisfaction of judgment, filed by the plaintiff in *Mazziotti* v. *Ye*, supra, Superior Court, Docket No. CV920330855S, provided as follows: "The plaintiff in the above entitled action hereby states that the judgment entered in the above case has been satisfied by the payment by the defendant of the sum of $29,950.00, of which $950.00 is for costs and $9000.00 is for prejudgment interest from the submission of an offer of judgment by the plaintiff."

[3] The terms of the policy upon which the plaintiff relies are consistent with the pertinent controlling legislation.

General Statutes § 38a-336 provides in relevant part: "Uninsured and underinsured motorist coverage. (a) (1) Each automobile liability insurance policy shall provide insurance, herein called uninsured and underinsured motorist coverage, in accordance with the regulations adopted pursuant to section 38a-334, with limits for bodily injury or death not less than those specified in subsection (a) of section 14-112, for the protection of persons insured thereunder *who are legally entitled to recover* damages from owners or operators of uninsured motor vehicles and underinsured motor vehicles and insured motor vehicles, the insurer of which becomes insolvent prior to payment of such damages, because of bodily injury, including death resulting therefrom. . . ." (Emphasis added.)

Section 38a-334-6 of the Regulations of Connecticut State Agencies provides in relevant part: "Minimum provision for protection against uninsured motorists

"(a) Coverage. The insurer shall undertake to pay on behalf of the insured all sums which the insured *shall be legally entitled to recover* as damages from the owner or operator of an uninsured motor vehicle because of bodily injury sustained by the insured caused by an accident involving the uninsured motor vehicle. . . ." (Emphasis added.)

ance policy issued by Allstate that are pertinent: the "consent to sue" provision that states that Allstate is not bound by any judgment resulting from an action by its insured against a responsible third party unless Allstate has given its written consent for the action;[4] and two separate provisions that allow for a reduction in the insured's recovery for any recovery the insured may obtain from another insurer or responsible party.[5]

On February 4, 1994, the plaintiff moved for summary judgment as to the issue of Allstate's liability only. The record reflects that Allstate did not object. Following the granting of that motion, the case was scheduled for a hearing in damages pursuant to Practice Book § 365 et seq. Thereafter, when the case came before the trial court for jury selection on the hearing in damages, the plaintiff filed a "motion for judgment."[6] Allstate opposed

[4] The section of the policy regarding Allstate's consent to sue provides: "If an insured person sues a person believed responsible for the accident without our written consent, we aren't bound by any resulting judgment."

[5] In support of its claim to the $40,000 setoff, Allstate relies on two provisions of its policy, the limits of liability provision and the trust agreement. The limits of liability provision of the policy provides in relevant part: "The limits of this coverage will be reduced by: 1. all amounts paid by the owner or operator of the uninsured auto or anyone else responsible. This includes all sums paid under the bodily injury liability coverage of this or any other policy. . . ."

The trust agreement provision of the policy provides in relevant part: "When we pay any person under this coverage: 1. we are entitled to repayment of amounts paid by us and related collection expenses out of the proceeds of any settlement or judgment that person recovers from any responsible party or insurer. . . ."

[6] On October 19, 1995, the plaintiff filed a "motion for judgment," requesting damages in the amount of $68,867, less any credits due under the policy. In a memorandum of law filed in support of the motion, the plaintiff argued that the judgment he obtained in his action against Ye should serve as the measure of damages in this later filed underinsured motorist claim against Allstate. Allstate, in a simultaneously filed memorandum, argued that because it was not in privity with the tortfeasor, and because the plaintiff had failed to obtain its consent to bring the action against Ye, the doctrine of collateral estoppel did not apply to bind Allstate on the issue of damages. No evidence was introduced by either party, and shortly thereafter, the trial court issued its memorandum of decision granting the

the motion, asserting that: (1) because Allstate lacked privity with Ye, the doctrine of collateral estoppel could not apply in this case; and (2) because the plaintiff had failed to obtain Allstate's written consent to bring the action against Ye pursuant to the terms of the policy, the judgment obtained by the plaintiff against Ye was not binding on Allstate as to the amount of damages the plaintiff was entitled to recover under the policy. On January 22, 1996, the trial court granted the plaintiff's motion for judgment, determining that Allstate had had sufficient notice of the prior action against Ye to render the judgment in that case binding upon Allstate and, further, that the consent to sue clause upon which Allstate relied was against public policy. Accordingly, the trial court held that Allstate was bound by the $68,867 judgment in the plaintiff's action against Ye, and rendered judgment for the plaintiff in the amount of $44,374.29.[7] Additionally, the trial court awarded interest on the judgment from the date of the filing of the complaint at a rate of 12 percent per annum, pursuant to General Statutes § 52-192a.

Thereafter, on February 9, 1996, Allstate, indicating that no new testimony would be required, moved, pursuant to Practice Book §§ 204A and 326,[8] to open the judg-

plaintiff's motion. Although the record does not reveal the catalyst for this procedurally unusual turn of events, in the absence of a transcript to provide an explanation we assume that the issue of collateral estoppel surfaced during a pretrial hearing at which time the trial court ordered simultaneous briefs on the issue.

[7] This amount reflects the court's conclusion that, of the $68,867 liability, Allstate was entitled to credit for collateral source payments received by the plaintiff in the amount of $24,492.71.

[8] Practice Book § 204A provides: "Any motions which would, pursuant to Sec. 4009, delay the commencement of the appeal period until all such motions have been decided, and any motions which, pursuant to Sec. 4009, would toll the appeal period and cause it to begin again after all such motions have been decided, shall be filed simultaneously insofar as such filing is possible, and shall be considered by the judge who rendered the underlying judgment or decision. The party filing any such motion shall set forth the judgment or decision which is the subject of the motion, the name of the

ment, raising, inter alia, the claim that, in light of the satisfaction of judgment that the plaintiff had filed in his action against Ye, the plaintiff was not "legally entitled" to the judgment. Claiming that Allstate had advanced no new or valid reason upon which the trial court should act, the plaintiff objected to the motion. The trial court denied Allstate's motion without opinion. Allstate appealed from the judgment of the trial court to the Appellate Court, and we transferred the appeal to this court pursuant to Practice Book § 4023 and General Statutes § 51-199 (c).

On appeal, Allstate makes the following arguments: (1) in light of the satisfaction of judgment filed by the plaintiff in his action against Ye, the plaintiff was not "legally entitled" to recover further damages from Ye and, consequently, may not recover any underinsured motorist benefits under his automobile insurance policy with Allstate; (2) even if Allstate's underinsured motorist coverage applies in this case, the judgment of the trial court must be reversed because (a) despite the terms of the policy requiring the plaintiff to obtain written consent from Allstate to bring the action against Ye, the plaintiff never obtained such consent, (b) Allstate was not in privity with Ye and thus is not bound

judge who rendered it, the specific grounds upon which the party relies, and shall indicate on the bottom of the first page of the motion that such motion is a Sec. 204A motion. The foregoing applies to motions to reargue decisions that are final judgments for purposes of appeal, but shall not apply to motions under Secs. 319 and 204B."

Practice Book § 326 provides: "Unless otherwise provided by law and except in such cases in which the court has continuing jurisdiction, any civil judgment or decree rendered in the superior court may not be opened or set aside unless a motion to open or set aside is filed within four months of the entry of judgment. The parties may waive the provisions of this paragraph or otherwise submit to the jurisdiction of the court.

"Upon the filing of a motion to open or set aside a civil judgment, except a judgment in a small claims or juvenile matter, the moving party shall pay to the clerk the filing fee prescribed by statute unless such fee has been waived by the court."

by the judgment in the plaintiff's action against Ye, and (c) Allstate had not received notice of the pendency of the plaintiff's action against Ye and, therefore, binding Allstate to the judgment in that action would violate Allstate's rights to due process and to its constitutionally guaranteed right to a trial by jury; (3) even if the plaintiff is entitled to recover under the underinsured motorist coverage, that recovery must, contrary to the trial court's judgment, be reduced by the entire $40,000 the plaintiff received from Ye's insurer; and (4) the trial court improperly awarded interest pursuant to § 52-192a, because that provision applies only when there has been a trial and there was no trial in this case. We conclude that, because Allstate did not have timely notice of the underlying action against Ye, the trial court improperly concluded that Allstate was bound by the judgment in that action.

I

Allstate first claims that the trial court should have granted its motion to open the judgment in the present case. Specifically, Allstate argues that because the plaintiff was not "legally entitled" to recover further damages from Ye, he was not entitled to recover any underinsured motorist benefits under the terms of his policy with Allstate.

The law of judgments and satisfaction of judgments is well settled. The construction of a judgment is a question of law with the determinative factor being the intent of the court as gathered from all parts of the judgment. 2 E. Stephenson, Connecticut Civil Procedure (C. Tait & P. Adomeit 1978) § 351 (e). As a general rule, the court should "construe [a] judgment as it would construe any document or written contract in evidence before it. *Jordan, Marsh & Co.* v. *Patterson*, 67 Conn. 473, 35 Atl. 521 [1896]; *De Santo* v. *Burkle*, 106 Conn. 677, 138 Atl. 738 [1927]." *Grasso* v. *Frattolillo*, 111 Conn.

209, 212, 149 A. 838 (1930). " 'Effect must be given to that which is clearly implied as well as to that which is expressed.' " *Lashgari* v. *Lashgari*, 197 Conn. 189, 197, 496 A.2d 491 (1985). As we recently have stated, "[a]lthough ordinarily the question of contractual intent presents a question of fact for the ultimate fact finder, where the language is clear and unambiguous it becomes a question of law for the court." (Internal quotation marks omitted.) *Gateway Co.* v. *DiNoia*, 232 Conn. 223, 232, 654 A.2d 342 (1995).

" 'The satisfaction of a judgment refers to compliance with or fulfillment of the mandate thereof.' " 47 Am. Jur. 2d, Judgments § 979 (1969). "There is realistically no substantial difference between the words 'paid' and 'satisfied' in the judgment context. See *Ex parte Krouse*, 148 Cal. 232, 233, 82 P. 1043 (1905)." *Lashgari* v. *Lashgari*, supra, 197 Conn. 200. Whether the satisfaction of judgment operates to discharge the judgment in any given case also depends upon intent; specifically, the clearly expressed intention of the parties making and accepting the payment. *Dwy* v. *Connecticut Co.*, 89 Conn. 74, 83, 92 A. 883 (1915). "The cardinal rule of interpretation is the discovery of the intent and meaning of the parties from the language used . . . ." Id., 88. As with a contract, in determining the meaning and effect of the controverted language in the satisfaction, the inquiry must focus on the intention expressed in the document and not on what intention existed in the minds of the parties. See *Water & Way Properties* v. *Colt's Mfg. Co.*, 230 Conn. 660, 666, 646 A.2d 143 (1994).

Allstate argues that there is nothing in the satisfaction of judgment to suggest that the plaintiff did not intend to discharge Ye from any further liability for the judgment in question. Cf. *Skut* v. *Hartford Accident & Indemnity Co.*, 142 Conn. 388, 397, 114 A.2d 681 (1955) (where satisfaction of judgment against principal for tort of agent *expressly* states that acceptance of pay-

ment is not waiver of larger judgment against agent, payment constituted satisfaction of larger judgment only to that extent). Allstate maintains that there is no ambiguity in the language used in the satisfaction of judgment. Rather, Allstate contends, the satisfaction clearly provides that the *judgment in the case has been satisfied*, and expressly divides the money into categories of costs and interest, leaving nothing open to interpretation.

In contrast, as evidence that he had never intended the document in question to constitute a full satisfaction, the plaintiff points to the fact that the present action was pending at the time the satisfaction of judgment was filed. Furthermore, although the plaintiff acknowledges that there can be but one satisfaction of damages; see *Burkhardt* v. *Armour & Co.*, 115 Conn. 249, 257, 161 A. 385 (1933); and that it was incumbent upon him as the party claiming that the satisfaction of judgment was only a partial discharge to express clearly that intent in the satisfaction, he nevertheless argues that his failure to do so was a mistake, which he could demonstrate if given the opportunity. See *Heyman Associates No. 1* v. *Ins. Co. of Pennsylvania*, 231 Conn. 756, 780–81, 653 A.2d 122 (1995).

We need not decide whether the law of satisfaction of judgments should apply to the present case to preclude recovery against Allstate under the plaintiff's underinsured motorist policy. Even if we were to agree with Allstate that application of the law of satisfaction of judgments to the present case would prevent the plaintiff from recovering any further damages from Ye or Allstate, the timing and the circumstances under which Allstate first raised this issue lead us to conclude that the trial court did not improperly deny Allstate's motion to open the judgment.

"The principles that govern motions to open or set aside a civil judgment are well established. Within four

months of the date of the original judgment, Practice Book § 326 vests discretion in the trial court to determine whether there is a good and compelling reason for its modification or vacation. . . . *Gillis* v. *Gillis,* 214 Conn. 336, 340–41, 572 A.2d 323 (1990); *Sanchez* v. *Warden,* 214 Conn. 23, 35, 570 A.2d 673 (1990); *Acheson* v. *White,* 195 Conn. 211, 214–15, 487 A.2d 197 (1985); *Steve Viglione Sheet Metal Co.* v. *Sakonchick,* 190 Conn. 707, 713, 462 A.2d 1037 (1983). *Hirtle* v. *Hirtle,* 217 Conn. 394, 398, 586 A.2d 578 (1991)." (Internal quotation marks omitted.) *Heyman Associates No. 1* v. *Ins. Co. of Pennsylvania,* supra, 231 Conn. 786.

Because opening a judgment is a matter of discretion, the trial court was not required to open the judgment to consider a claim not previously raised. "The exercise of equitable authority is vested in the discretion of the trial court and is subject only to limited review on appeal." *Wilkinson* v. *Boats Unlimited, Inc.,* 236 Conn. 78, 84, 670 A.2d 1296 (1996). "We do not undertake a plenary review of the merits of a decision of the trial court to grant or to deny a motion to open a judgment. The only issue on appeal is whether the trial court has acted unreasonably and in clear abuse of its discretion." *In re Baby Girl B.,* 224 Conn. 263, 294–95, 618 A.2d 1 (1992). "In determining whether the trial court abused its discretion, this court must make every reasonable presumption in favor of its action. *State* v. *Bitting,* 162 Conn. 1, 11, 291 A.2d 240 (1971); *E.M. Loew's Enterprises, Inc.* v. *Surabian,* 146 Conn. 608, 612, 153 A.2d 463 (1959). . . . *Walton* v. *New Hartford,* 223 Conn. 155, 169, 612 A.2d 1153 (1992). . . . *Somers* v. *LeVasseur,* 230 Conn. 560, 570–71, 645 A.2d 993 (1994)." (Internal quotation marks omitted.) *Heyman Associates No. 1* v. *Ins. Co. of Pennsylvania,* supra, 231 Conn. 786.

We cannot conclude that the trial court abused its discretion in denying Allstate's motion to open the judgment. After the trial court already had rendered judg-

ment in favor of the plaintiff, Allstate, in its motion to open the judgment, raised for the first time its claim that because the plaintiff had furnished Ye with a satisfaction of judgment, the plaintiff was barred from pursuing his underinsured motorist claim. Allstate stated in the motion that no testimony was needed. Furthermore, in denying the motion, the trial court did not reveal the basis upon which it made its decision. Consequently, we do not know whether the trial court considered the question of whether the plaintiff was legally entitled to recover from Allstate, or whether the trial court exercised its discretion by refusing to consider the merits because the motion had not been timely. We do not know this information because, despite its responsibility to secure an adequate record, Allstate failed to make the record clear by seeking an articulation from the trial court. See Practice Book §§ 4007 and 4051. Accordingly, we conclude that the trial court did not act in clear abuse of its discretion.

II

Allstate next claims that the trial court's determination that the doctrine of collateral estoppel applied to bind Allstate was improper because: (1) the plaintiff had failed to obtain Allstate's consent to bring the action against Ye in accordance with the provisions of the policy; and (2) Allstate and Ye were not in privity.[9] Specifically, in connection with its first assertion, Allstate claimed before the trial court that the plaintiff had not obtained its written consent to sue pursuant to the underinsured motorist provision of the policy, which provides that "[i]f an insured person sues a person believed responsible for the accident without our written consent, we aren't bound by any resulting judg-

_____

[9] Because Allstate did not object to the trial court's granting of the plaintiff's first motion for summary judgment, which pertained to liability only, the sole issue before us on appeal is whether Allstate is bound by the judgment as to damages.

ment." Because consent to sue provisions are directly authorized by § 38a-334-6 (b) of the Regulations of Connecticut State Agencies,[10] Allstate argued that the failure to comply with its policy provision precluded the plaintiff from relying on the earlier judgment obtained against Ye. The plaintiff argued in response that the regulation allows a consent to sue provision only in the arbitration context, and that to extend it to the present case would violate public policy because it conflicts with General Statutes § 38a-336 (a) (1).

The trial court determined that the consent to sue provision in Allstate's policy "applies only in the context of arbitration between the insured and the insurer, not to underinsured motorist benefits in general," and that to extend it to the present case would be against public policy. The trial court further concluded that because Allstate and Ye were indeed in privity and because Allstate had notice of the plaintiff's earlier action against Ye, Allstate was bound by the judgment in that action. We conclude that, because the trial court's finding of privity was improper, the defendant could not be bound by the judgment in the action by the plaintiff against Ye.[11]

"Because res judicata or collateral estoppel, when properly raised and established, will preclude a claim or issue, respectively, the defendant's invocation of this principle must first be resolved. We have recently had an opportunity to address these two doctrines, their similarities and their differences. *Jackson* v. *R. G. Whip-*

---

[10] Section 38a-334-6 (b) of the Regulations of Connecticut State Agencies provides: "Arbitration. The insurance may provide but not require that the issues of liability as between the insured and the uninsured motorist, and the amount of damages, be arbitrated. The insurer may provide against being bound by any judgment against the uninsured motorist."

[11] In light of our determination on the issue of privity, and despite the urging of the Connecticut Trial Lawyers Association in its amicus brief to declare the consent provision void as against public policy, we need not address the issue of the permissible scope of the consent to sue provision.

*ple, Inc.*, 225 Conn. 705, 712–13, 627 A.2d 374 (1993), and cases cited therein. Claim preclusion (res judicata) and issue preclusion (collateral estoppel) have been described as related ideas on a continuum. [C]laim preclusion prevents a litigant from reasserting a claim that has already been decided on the merits. . . . [I]ssue preclusion, prevents a party from relitigating an issue that has been determined in a prior suit. *Virgo v. Lyons*, 209 Conn. 497, 501, 551 A.2d 1243 (1988), quoting *Gionfriddo v. Gartenhaus Cafe*, 15 Conn. App. 392, 401–402, 546 A.2d 284 (1988), aff'd, 211 Conn. 67, 557 A.2d 540 (1989)." (Internal quotation marks omitted.) *Crochiere v. Board of Education*, 227 Conn. 333, 342–43, 630 A.2d 1027 (1993).

The two doctrines "protect the finality of judicial determinations, conserve the time of the court and prevent wasteful relitigation." (Internal quotation marks omitted.) *Virgo v. Lyons*, supra, 209 Conn. 501. "Res judicata, or claim preclusion, is distinguishable from collateral estoppel, or issue preclusion. Under the doctrine of res judicata, a final judgment, when rendered on the merits, is an absolute bar to a subsequent action, between the same parties or those in privity with them, upon the same claim. *Slattery v. Maykut*, 176 Conn. 147, 156–57, 405 A.2d 76 (1978). In contrast, collateral estoppel precludes a party from relitigating issues and facts actually and necessarily determined in an earlier proceeding between the same parties or those in privity with them upon a different claim. *DeLaurentis v. New Haven*, 220 Conn. 225, 239, 597 A.2d 807 (1991)." *Weiss v. Statewide Grievance Committee*, 227 Conn. 802, 818, 633 A.2d 282 (1993). Furthermore, "[t]o invoke collateral estoppel the issues sought to be litigated in the new proceeding must be identical to those considered in the prior proceeding. *Aetna Casualty & Surety Co. v. Jones*, 220 Conn. 285, 297, 596 A.2d 414 (1991)." *Crochiere v. Board of Education*, supra, 227 Conn. 345.

Both issue and claim preclusion "express no more than the fundamental principle that once a matter has been fully and fairly litigated, and finally decided, it comes to rest." *State* v. *Ellis*, 197 Conn. 436, 465, 497 A.2d 974 (1985).

The present case presents a question of issue preclusion, which requires an identity of issues between the prior and subsequent proceedings and operates only against the same parties or those in privity with them. "While it is commonly recognized that privity is difficult to define, the concept exists to ensure that the interests of the party against whom collateral estoppel [or res judicata] is being asserted have been adequately represented because of his purported privity with a party at the initial proceeding. . . . A key consideration in determining the existence of privity is the sharing of the same legal right by the parties allegedly in privity. . . . *Aetna Casualty & Surety Co.* v. *Jones*, [supra, 220 Conn. 304]." (Internal quotation marks omitted.) *Weiss* v. *Statewide Grievance Committee*, supra, 227 Conn. 818. "This is to ensure that the interests of the party against whom collateral estoppel is being asserted have been adequately represented because of his purported privity with a party at the initial proceeding." *State* v. *Fritz*, 204 Conn. 156, 173, 527 A.2d 1157 (1987).[12]

Privity is a difficult concept to define precisely. *Commissioner of Environmental Protection* v. *Connecticut Building Wrecking Co.*, 227 Conn. 175, 193, 629 A.2d 1116 (1993). There is no prevailing definition of privity to be followed automatically in every case. It is not a matter of form or rigid labels; rather it is a matter of

[12] As we have recognized, the concept of privity has moved away from the conventional and narrowly defined meaning of mutual or successive relationships to the same rights or property. It now signifies a relationship between one who is a party of record and another who is a nonparty, but is sufficiently close to mandate the application of res judicata or collateral estoppel. See *State* v. *Fritz*, supra, 204 Conn. 173.

substance. In determining whether privity exists, we employ an analysis that focuses on the functional relationships of the parties. Privity is not established by the mere fact that persons may be interested in the same question or in proving or disproving the same set of facts. Rather, it is, in essence, a shorthand statement for the principle that collateral estoppel should be applied only when there exists such an identification in interest of one person with another as to represent the same legal rights so as to justify preclusion. *Joe's Pizza, Inc.* v. *Aetna Life & Casualty Co.*, 236 Conn. 863, 868, 675 A.2d 441 (1996).

In *State* v. *Fritz*, supra, 204 Conn. 170–77, the court examined the unity of interests shared by two different agencies representing the state, the commissioner of consumer protection and the state's attorneys within the division of criminal justice. At the defendant's criminal trial, the defendant moved to dismiss the information charging him with prescribing a controlled substance in an unauthorized manner in violation of General Statutes §§ 21a-277 (a) and 21a-252 (a). He claimed that the issues in the criminal case had been fully and fairly litigated in his favor in a prior administrative proceeding in which the hearing officer had considered the allegation that the defendant had improperly and illegally prescribed medication and had decided not to suspend the defendant's license to practice medicine. This court disagreed, concluding that, although both parties had represented the rights of the state, privity did not exist.

In reaching that conclusion, the court reasoned that the "purpose of the administrative proceedings . . . is to police licensing requirements within the state, while the state's attorney's interest in the criminal proceeding is in having guilt or innocence determined under the applicable criminal law and in seeing that proper punishment is meted out in the event that the criminal law

has been violated." Id., 176. The administrative proceeding focused exclusively on the issue of licensing and not on the broader question of criminal culpability. Nor did the commissioner represent the public interest in the effective administration of criminal justice. Because this administrative proceeding did not serve "the state's interest in having guilt or innocence determined"; id.; the defendant could not establish the privity critical to the application of collateral estoppel.

A more recent discussion of privity expands on the analysis of *Fritz*. In *Aetna Casualty & Surety Co.* v. *Jones*, supra, 220 Conn. 286, we examined "whether an insurance company may use collateral estoppel to bar the heirs of a homicide victim from relitigating the issue of the criminal defendant's intent to cause the injuries that resulted in the victim's death." In the earlier criminal trial, the defendant, Russell Manfredi, had been charged with the intentional murder of his wife. Although he admitted killing her, he denied that he had intended to kill her. Nevertheless, the jury found Manfredi guilty of manslaughter in the first degree in violation of General Statutes § 53a-55 (a) (2). To reach that conclusion, the jury would have been required to find that the state had proved that Manfredi had intentionally killed his wife, but that he suffered from an extreme emotional disturbance at the time of the killing. Id., 288.

Thereafter, Margaret Billings Jones, the administratrix of the victim's estate, brought a wrongful death action against Manfredi, who was the named insured on a homeowner's insurance policy and a personal excess indemnity insurance policy, both of which had been issued by Aetna Casualty and Surety Company (Aetna). Both policies contained language limiting coverage only to those injuries not intentionally caused by the insured. Following a default judgment against Manfredi resulting in an order to pay $450,000 to the victim's estate, Aetna

filed a declaratory judgment action to establish that the insurance policies provided by Aetna did not apply to cover the award, because the injuries suffered by the victim had been caused intentionally by Manfredi, the insured. Aetna subsequently moved for summary judgment, claiming that the finding by the jury in the criminal trial that Manfredi intentionally had caused the victim's death collaterally estopped the executrix and Manfredi from relitigating the issue of Manfredi's intent. The trial court denied the motion. Id., 288–89.

We reversed the trial court and remanded the case with direction to render judgment in favor of the plaintiff. Id., 307. We focused on whether the parties shared the same legal right and determined that Manfredi and his victim shared the same legal right to recover damages. Id., 305. The claims of the victim's heirs upon the coverage of the insurance policy emanated from the contractual relationship between the insurer and Manfredi. Consequently, the heirs' rights could only be as good as the rights that Manfredi could assert under the insurance contract. Id., 306. Because Manfredi and his victim shared an identical legal right in the potential proceeds derived from the contractual relationship between Manfredi and his insurance company, we held that Manfredi and the victim's heirs shared a legal interest placing them in privity. Id.

In addition, we examined whether Manfredi had had a fair and full opportunity to litigate the issue of intent at the first trial. We recognized that had the offense been of a minor or trivial nature, Manfredi might not have been motivated sufficiently to challenge the allegations made at trial, in which case it might be unfair to allow collateral estoppel to be asserted later against him or someone in privity with him. Because Manfredi had been charged with murder, however, and therefore faced a potential sentence of life imprisonment, "his motivation to prove a lack of intent was compelling."

Id., 306–307. Accordingly, we concluded "that the issue of his intent was thoroughly litigated" in the first trial. Id., 307.

In the present case, Allstate argues that it was not in privity with Ye because its "exposure was different"—Ye had an automobile policy limit with a $20,000 liability limit, while Allstate's exposure was $100,000. Although we agree that this difference is relevant in evaluating whether Ye had been motivated sufficiently to protect the rights and interests of Allstate; id., 306; we nevertheless conclude that because Ye and Allstate did not share the same *legal* right, they were not in privity.

The substance of the cause of action in the first trial was an action in tort; specifically, whether Ye was liable to the plaintiff for the negligent operation of his motor vehicle. An action to recover under an automobile insurance policy, on the other hand, is not an action in tort but, rather, an action in contract. "The obligation of [an] insurance carrier providing uninsured motorist coverage as a part of its liability insurance coverage on the automobile of the insured person is a *contractual* obligation arising under the policy of insurance." (Emphasis in original.) *State Farm Mutual Automobile Ins. Co.* v. *Board of Regents of the University System of Georgia*, 226 Ga. 310, 311, 174 S.E.2d 920 (1970). Payments made pursuant to an uninsured motorist policy are paid on behalf of the insured, and not on behalf of the financially irresponsible motorist who has caused the insured's injuries. *Pecker* v. *Aetna Casualty & Surety Co.*, 171 Conn. 443, 452, 370 A.2d 1006 (1976). The insurer is not the alter ego of the tortfeasor and, although its contractual liability is premised in part on the contingency of the tortfeasor's liability, they do not share the same legal right. The commonality of interest in "proving or disproving the same facts" is not enough to establish privity. *State* v. *Fritz*, supra, 204 Conn. 173.

In reaching this conclusion we are consistent with other courts that have examined this issue. A search of other jurisdictions indicates that the insurer does not stand in the tortfeasor's shoes; *Booth* v. *Fireman's Fund Ins. Co.*, 253 La. 521, 528, 218 So. 2d 580 (1968); and is not in privity with the tortfeasor. *Dugas* v. *Lumbermens Mutual Casualty Co.*, 22 Conn. App. 27, 32, 576 A.2d 165 (1990), rev'd, 217 Conn. 631, 587 A.2d 415 (1991); see also *Cingoranelli* v. *St. Paul Fire & Marine Ins. Co.*, 658 P.2d 863, 869 (Colo. 1983) (general release given tortfeasor in exchange for settlement does not affect no-fault [uninsured motorist] insurance carrier because insurer not in privity with tortfeasor); *Jones* v. *Southern Home Ins. Co.*, 135 Ga. App. 385, 389, 217 S.E.2d 620 (1975), cert. denied, 424 U.S. 902, 96 S. Ct. 1093, 47 L. Ed. 2d 307 (1976) (no privity of contract between insurer and one who injured its policyholder); *Bailey* v. *Aetna Casualty & Surety Co.*, 497 S.W.2d 816, 820 (Mo. App. 1973) (plaintiff's insurer not party to litigation giving rise to release nor in privity with defendant tortfeasor); *Sparler* v. *Fireman's Ins. Co. of Newark, New Jersey*, 360 Pa. Super. 597, 605, 521 A.2d 433 (1987) (adopting *Cingoranelli* and *Bailey*; underinsured motorist insurance carrier not in privity with third party tortfeasor); annot., 39 A.L.R.4th 378 (1985); 8C J. Appleman & J. Appleman, Insurance Law and Practice (1981) § 5071, p. 83.

Finally, we recognize the "crowning consideration" in collateral estoppel cases and the basic requirement of privity—that the interest of the party to be precluded must have been sufficiently represented in the prior action so that the application of collateral estoppel is not inequitable. *Aetna Casualty & Surety Co.* v. *Jones*, supra, 220 Conn. 306. A trial in which one party contests a claim against another should be held to estop a third person only when it is realistic to say that the third person was fully protected in the first trial. *State* v.

*Fritz,* supra, 204 Conn. 173. In the first case, Ye's insurer had limited exposure and did not assert any material issue of fact regarding Ye's liability. Consequently, there was little or no incentive in litigating against a recovery in excess of that amount and even less in appealing the award. Allstate, on the other hand, with five times the risk, was in a different position with a far greater incentive to litigate. Cf. *Aetna Casualty & Surety Co.* v. *Jones,* supra, 220 Conn. 306–307 (defendant's interest in avoiding life imprisonment in first trial compelling enough to establish fairness in application of collateral estoppel). In deciding the issue of privity under the circumstances of this case, we conclude, therefore, that the relationship between the party to be estopped (Allstate) and the unsuccessful party in the prior litigation (Ye) is not sufficiently close so as to justify the application of the principles of preclusion. Accordingly, we conclude that the trial court improperly invoked the doctrine of collateral estoppel against Allstate.

### III

Because it may arise again at trial, we address Allstate's final claim that the trial court incorrectly denied it a setoff for the $20,000 that the plaintiff had received in settlement of his bad faith claim against Patriot General.[13] Specifically, Allstate claims that the trust agreement and the limits of liability provisions of its policy with the plaintiff,[14] as authorized by § 38a-334-6 (d) of the Regulations of Connecticut State Agencies,[15]

---

[13] Because we have concluded that Allstate is not bound by the judgment in the plaintiff's action against Ye and that a new trial is required, we need not address the application of § 52-192a.

[14] See footnote 5.

[15] Section 38a-334-6 (d) of the Regulations of Connecticut State Agencies provides in relevant part: "Limits of liability. The limit of the insurer's liability may not be less than the applicable limits for bodily injury liability specified in subsection (a) of section 14-112 of the general statutes, except that the policy may provide for the reduction of limits to the extent that damages have been (1) paid by or on behalf of any person responsible for the injury . . . ."

must be read to include *any* payments rendered to its insured by another insurance company, regardless of which legal theory has been invoked to require the payment. We disagree.

The following additional facts are necessary to our resolution of this issue. After prevailing in his action against Ye, which resulted in the plaintiff collecting $20,000 in damages, the plaintiff filed a separate action against Patriot General,[16] claiming bad faith, negligence, and violations of the Connecticut Unfair Insurance Practices Act (CUIPA)[17] and the Connecticut Unfair Trade Practices Act (CUTPA).[18] Specifically, the plaintiff alleged that Patriot General: (1) had not acted in good faith when, prior to trial in his action against Ye, it refused the plaintiff's offers to settle for the amount of Ye's liability coverage under Ye's policy with Patriot General; (2) had been negligent in its duty to the plaintiff by failing to pay any or all of the judgment awarded to the plaintiff in his action against Ye; (3) had violated CUIPA by having failed to attempt a good faith settlement of the plaintiff's claims in his action against Ye; and (4) had violated CUTPA by systematically having failed to attempt such good faith settlements.

On February 9, 1995, the plaintiff filed a release with the trial court in exchange for which he received a payment of $20,000 from Patriot General. In the release, the plaintiff expressly stated that the $20,000 was being paid as settlement of the negligence, CUIPA and CUTPA claims, and only those claims. The release further stated that although Patriot General was not making any payment to the plaintiff on the bad faith claims, the plaintiff agreed to release those claims as well. The release contained no language connecting it with the plaintiff's

---

[16] *Mazziotti* v. *Patriot General Ins. Co.*, supra, Superior Court, Docket No. CV930353278S.

[17] General Statutes § 38a-815 et seq.

[18] General Statutes § 42-110a et seq.

earlier action against Ye that had resulted in a $68,867 judgment for the plaintiff.

Allstate argues that the $20,000 paid by Patriot General in settlement of the action in *Mazziotti* v. *Patriot General Ins. Co.*, supra, Superior Court, Docket No. CV930353278S, should be deducted along with the $20,000 payment the plaintiff received from Patriot General for the judgment in *Mazziotti* v. *Ye*, supra, Superior Court, Docket No. CV920330855S, for a total setoff of $40,000. Allstate reasons that, but for Ye's liability in the first action, the plaintiff would have had no reason to bring the separate action against Patriot General. Allstate cites to its insurance contract with Mazziotti, this court's decision in *American Motorists Ins. Co.* v. *Gould*, 213 Conn. 625, 569 A.2d 1105 (1990), overruled in part on other grounds, *Covenant Ins. Co.* v. *Coon*, 220 Conn. 30, 37, 594 A.2d 977 (1991), and the decision of the Appellate Court in *Allstate Ins. Co.* v. *Lenda*, 34 Conn. App. 444, 642 A.2d 22, cert. denied, 231 Conn. 906, 648 A.2d 149 (1994), to support its argument that its right of recovery extends beyond payments directly attributable to the plaintiff's injuries. We are not persuaded by Allstate's arguments, and conclude that Allstate is not entitled to a $20,000 setoff for the money the plaintiff received in his settlement of his claims against Patriot General.

Allstate's insurance contract, in the trust agreement and limits of liability provisions, provides that Allstate may recover from amounts paid by or on behalf of the tortfeasor or from "the proceeds of any settlement or judgment [the insured] recovers from any responsible party or insurer." See footnote 5. Although in the trial court Allstate did not offer any law or authority in support of this claim, on appeal it contends that this court and the Appellate Court have interpreted similar language in *Gould* and *Lenda* in such a manner as to allow Allstate to claim reimbursement from the settle-

ment proceeds of the plaintiff's action against Patriot General. We disagree.

*Gould* involved an automobile accident in which four persons were injured. All four received payment from the automobile owner's liability insurance. Because her damages exceeded the amount of her award, the defendant in that case, Karen Gould, sought further payment from the uninsured motorist provision of that same policy. The trial court determined that, because the payments to Gould were less than the total limits of liability under the uninsured motorist provision, Gould was entitled to recover under that uninsured motorist provision. This court reversed the trial court's judgment, stating that "[t]he policy provision reducing uninsured motorist limits by payments made in behalf of the tortfeasor, specifically including 'all sums' paid under the liability portion of the policy, expressly contemplates that the entire [amount paid to all claimants] is to be subtracted from the . . . uninsured motorist limit . . . ." *American Motorists Ins. Co.* v. *Gould*, supra, 213 Conn. 636. The Appellate Court in *Lenda* stated that references to damages in uninsured motorist policies may include property damage in addition to physical injury. *Allstate Ins. Co.* v. *Lenda*, supra, 34 Conn. App. 455.

Neither of these cases supports Allstate's proposition that *any* money paid by an insurer, regardless of the legal theory under which such payment is made, is subject to recovery by an insurer that has made payments under its uninsured motorist policy. The central point of these cases, and cases cited therein, is that an uninsured tortfeasor's liability for *damages* may extend beyond personal injuries to property damages, and may extend to multiple claimants, in which case those factors must be taken into account when determining the application of the insurer's uninsured motorist coverage. We are unable to fashion any reasonable interpreta-

tion of the relevant case law and regulations so as to include payments made by an insurance company to settle an action based on bad faith, negligence and violations of CUTPA and CUIPA. Such payments bear a less than tangential relationship to the insured's damages. The payments were made *not* on behalf of the tortfeasor, Ye, but on behalf of Patriot General *itself*, in order to avoid further litigation over its own trade practices. The language of the release filed by the plaintiff in that action is very clear—Patriot General, in return for a payment of $20,000, was released from the claims that, in its dealings with the plaintiff, it had acted negligently and had violated CUTPA and CUIPA. The release contained no reference to the separate action against Ye. Accordingly, the trial court properly declined to include the settlement in the setoff.

The judgment of the trial court is reversed and the case is remanded for a new trial on the issue of damages.

In this opinion the other justices concurred.

BORDEN, J., concurring. I agree with and join the majority opinion, except with respect to its substantive discussion of the law of satisfaction of judgments. I agree with the majority that, under the procedural circumstances of this case, the trial court was within its discretion in declining to open the judgment in order to consider the question of the satisfaction of the judgment against the third party tortfeasor and that, accordingly, it is not necessary for us to consider the effect, if any, of that satisfaction of judgment.

I decline, however, to join the rest of the majority's discussion regarding satisfactions of judgments, insofar as they may or may not apply when the party who has delivered such a document thereafter attempts to recover under his underinsured motorist policy. We have never been confronted with, and therefore have

never decided, whether the law of satisfaction of judgments applies, or should be held to apply, to that situation. I see no reason, therefore, to elaborate on the law of satisfaction of judgments in a case, such as this, in which we are specifically *not* considering the effect, if any, of the satisfaction of judgment previously filed by the plaintiff.