[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
This is a real estate tax appeal taken from the action of the city of Waterbury Board of Tax Review denying the plaintiffs' claims that their properties were over assessed. The plaintiffs challenge the assessments on the lists of October 1, 1994, 1995, 1996 and 1997.
The last revaluation date for the city of Waterbury was on the grand list of October 1, 1980. The plaintiffs are owners of nineteen individual condominium units located at Lakewood Village in Waterbury. The condominium units at Lakewood Village were constructed in 1987 and completed by 1988. In placing a value on real property constructed subsequent to the last revaluation date, for tax purposes, an assessor is required to relate the value of the condominiums back to the date of the last revaluation. Newbury Commons Limited Partnership v. Stamford,226 Conn. 92, 95, 103, 626 A.2d 1292 (1993). This is exactly what the assessor for the city of Waterbury did. He determined the value of the Lakewood units as if they had been built on October 1, 1980, the date of the last city-wide revaluation. The assessor, CT Page 5606 adopting the comparable sales approach to value, used the sales of the only other condominium development in Waterbury known as Woodhaven Condominium. The Woodhaven Condominiums sales were as follows:
 Woodhaven Condominium, 55-85 Bentwood Drive 9-30
Woodglen Drive, Waterbury. Original construction began in 1976. Waterbury's only condominium in 1980.
 Sales occurring around October 1, 1980

 Building 12 unit 2 7/02/80 $37,500.00 1298 sq.ft.
 (3 BR) 12 5 7/15/80 40,500.00 1298 sq.ft.
 (3 BR) 12 6 8/22/80 45,500.00 1298 sq.ft.
 (3 BR) 11 1 8/06/80 44,500.00 1143 sq.ft.
 (2 BR) 11 2 9/18/80 42,000.00 1143 sq.ft.
 (2 BR) 8 3 8/28/80 42,000.00 1298 sq.ft.
 (3 BR) 8 6 5/02/80 41,500.00 1298 sq.ft.
 (3 BR) 7A 2 10/02/80 42,500.00 1143 sq.ft.
 (2 BR) 7B 2 7/18/80 38,500.00 1143 sq.ft. (2 BR)
 Average $41,611.11
 (Or $41,400.00 — 3 B.R. $41,875.00 — 2BR)

(Plaintiffs' exhibit F, Woodhaven Condominium — Sales Study.)
When Lakewood Condominium came on the market in 1987-88, the assessor used Woodhaven comparables in 1980 to determine the value of the Lakewood Condominium units as of October 1, 1980. The assessor used an assessed value of approximately $25 per, square foot of building as comparable to the Woodhaven units in October of 1980 and applied this measurement to the Lakewood units.
The original sales of Lakewood condominium units occurring in 1987 as presented by Walter J. Kloss, the plaintiffs' expert appraiser, were as follows:
LAKEWOOD VILLAGE CONDOMINIUM — SALES STUDY
Original Sales in 1987 — New Construction
 2 Bedroom Flats — End Units 955 sq.ft. $85-99,500.00 Middle 955 sq.ft. $85-97,500.00 Lower 1050 sq.ft. $ 75,900.00 First 1050 sq.ft. $ 77,900.00 CT Page 5607 Second 1050 sq.ft. $ 101,500.00
 2 Bedroom Townhouses — Middle 1008 sq.ft. $92-101,175.00 End 1022 sq.ft. $92-101,500.00
 NOTE: Original sales reflect a price differential based upon the costs of construction.
(Plaintiffs' exhibit F, Lakewood Condominium — Sales Study.)
Following the reasoning of the Waterbury assessor, at approximately $25 per square foot of building area, we have constructed the following chart summarizing the assessments of the Lakewood units as of October 1, 1980 and their subsequent sales prices:
Lakewood
 Assmt. 10/1/87 original FMV Area per Assmt. 10/1/80 Selling % Diff Unit Sq.ft. Sq.ft. .70 FMV FMV Price-1987 1980-1987 2 bedroom flats End 955 $25* $24,030 $34,329 $85-99,500 40% Middle 955 $25* $22,950 $32,786 $85-97,500 39% Lower 1050 $25* $26,460 $37,800 $75,900 50% First 1050 $25* $26,460 $37,800 $77,900 49% Second 1050 $25* $26,460 $37,800 $101,500 37%
2 bedroom townhouses Middle 1008 $25* $25,920 $37,029 $92-101,175 40% End 1022 $25* $25,920 $37,029 $92-101,500 40%
* Approximately
(See plaintiffs' exhibits D, F.)
If we take the 1980 fair market value of the Lakewood units established by the assessor and take the 1987 sales prices of the Lakewood units as presented by the plaintiffs, we see that the Lakewood units would have appreciated approximately 40% in the seven year period from 1980 to 1987.
Comparing Woodhaven sales, Kloss reported Woodhaven condominium sales occurring around October 1, 1980 and sales occurring in 1990 and 1991 as follows: CT Page 5608
Woodhaven
 Units — 1980 Sale date Sale Price Building 12 unit 2 7/2/80 $37,500 12 5 7/15/80 $40,500 12 6 8/22/80 $45,500 11 1 8/6/80 $44,500 11 2 9/16/80 $42,000 8 3 8/28/80 $42,000 8 6 5/2/80 $41,500 7A 2 10/2/80 $42,500 7B 2 7/18/80 $38,500 Average $41,611.11
 Units — 1990-1991 Building 11 unit 12 12/6/90 $89,900 9 2 6/14/90 $85,000 8 5 7/22/91 $83,950 7C 7 5/2/91 $92,000 Average $87,712
(See plaintiffs' exhibit F.)
Using the above averages of sales at Woodhaven in 1980 and in 1990-91, we see the Woodhaven units appreciated about 47% in value between 1980 and 1991. 1990 sales of Lakewood units were $72,900 for an end unit 2 bedroom flat and $80,900 for a middle unit 2 bedroom townhouse. (See plaintiffs' exhibit F.) These sales show an appreciation of 47 and 44% respectively, from the 1980 fair market value placed on the Lakewood units by the assessor to 1990. These figures are consistent with the appreciation of the Woodhaven units.
According to Kloss's Lakewood sales study (see plaintiffs' exhibit F), the most recent sales of condominiums in Lakewood in 1994 and 1995 reflect an average selling price of $30,830 for 2 bedroom townhouses, $22,250 for 2 bedroom flats that are interior units and $27,500 for 2 bedroom flats that are end units.
Kloss's study of recent sales pertaining to Woodhaven and Lakewood (see plaintiffs' exhibit F) reflect the common knowledge that the bottom fell out of the condominium market, with the decline beginning around 1990. Unfortunately for condominium owners in Waterbury, a change in market value is not a basis for CT Page 5609 changing the assessment of property between periods of revaluation. Ralston Purina Co. v. Board of Tax Review,203 Conn. 425, 438-39, 525 A.2d 91 (1987). See also General Statutes §12-63d.[1] Also, unfortunately for taxpayers in Waterbury, no new revaluation of property has occurred for almost 20 years in disregard of the legislative mandate in General Statutes §12-62. Waterbury has a history of disregarding the legislative mandate in § 12-62.[2]
The plaintiffs seek a reduction in their assessments as follows:
 Current Claimed Style of unit Sq.ft. Asmt. Asmt.
 2 bedroom-flat 955 $22,950 $ 8,300 2 bedroom-flat end unit 955 $24,030 $10,500 2 bedroom-townhouse 1022 $25,920 $11,040
(See plaintiffs' brief, pp. 10-11.)
The plaintiffs make a three prong attack on the assessments placed upon their properties by the assessor. The first prong results from a study by the Office of Policy and Management (OPM) in 1980 composed of the sales/assessment ratio of real property in the city of Waterbury.
General Statutes § 12-64 provides that property "shall be liable to taxation at a uniform percentage of its present true and actual valuation, not exceeding one hundred per cent of such valuation to be determined by the assessors." "Use of the average ratio approach is not a supplement to fair valuation as mandated by [General Statutes § 12-64]; it is appropriate only as an evidentiary tool useful in establishing that the statutory requirements have not been followed and as a remedy for such failure." Uniroyal. Inc. v. Board of Tax Review, 182 Conn. 619,626, 438 A.2d 782 (1981); see Newbury Commons Limited Partnershipv. Stamford, supra, 226 Conn. 101-102.
The OPM survey shows that the sales/assessment ratio for residential real property was 52.4%. OPM arrived at a ratio of 52.4% by taking 725 residential sales made in 1980 in Waterbury and divide the total net assessment of the 725 sales by the equalized value of the 725 sales, i.e. $438,920,164 divided by CT Page 5610 837,633,901 is 52.4 percent. (Plaintiffs' exhibit G.) The plaintiffs argue that since Lakewood would have been assessed at 70% of value in 1980, other residential property in 1980 was being assessed 25% less than Lakewood. We disagree. The residential sales in Waterbury used by OPM included all single family homes as well as condominiums. Multi-family residential units were excluded from this OPM survey. Kloss acknowledged that the sales market for single family homes and for condominiums are not the same. We agree. We do not find the plaintiffs' sales/assessment ratio analysis based on the broad OPM survey of residential property in 1980 or Kloss' interpretation of that survey, to be persuasive to show that the assessor failed to follow the statutory requirements in valuing the plaintiffs' property. In valuing condominiums, appraisers generally use the sales comparison approach to value, relying on recent sales of comparable size units, location and quality. The Appraisal Institute, The Appraisal of Real Estate (10th ed. 1992) p. 132. The assessor properly used the comparable sales approach to determine the value of the Lakewood units.[3]
The second prong of the plaintiffs' argument is the survey performed by Kloss of condominium sales of Woodhaven condominiums in 1990 and 1991, in which he evaluated Woodhaven unit values in 1980 by trending back the 1990-1991 sales to 1980. Kloss testified that the period between 1990 and 1991 was a period of stability in the condominium market in Waterbury. We find it difficult to accept trending back values from 1990 and 1991 to 1980 when the key issue is the 1987 value of the Lakewood units trended back to 1980. The Waterbury assessor would not have had 1990-91 sales available to him as of the time he added the Lakewood units to the grand list in 1987, regardless of whether 1990-91 was the most stable period of condominium sales.
The third prong of the plaintiffs' attack is their reliance upon a tax appeal taken of seventeen condominium units in Woodhaven. In the case of Ghent v. City of Waterbury Board of TaxReview, Superior Court, judicial district of Waterbury, Docket No. CV92-0109836 (Pellegrino, J.), owners of Woodhaven units challenged the 1980 assessments placed on their condominiums by the Waterbury assessor. A stipulated judgment was entered inGhent by agreement of the parties in that case that the October 1, 1980 assessed values on certain condominiums in Woodhaven were $12,000 and $11,000. (See plaintiff's exhibit I.) The plaintiffs in this case claim that the stipulated judgment in Ghent should collaterally estop the city from relitigating the assessment issue at CT Page 5611 Woodhaven. The plaintiffs' reasoning is that since the assessor used Woodhaven as his base for determining the assessment on the Lakewood condominium units, the assessor should apply the assessments agreed upon in Ghent to the Lakewood units.
"[C]ollateral estoppel precludes a party from relitigating issues and facts actually and necessarily determined in an earlier proceeding between the same parties or those in privity with them upon a different claim. . . . Furthermore, to invoke collateral estoppel the issues sought to be litigated in the new proceeding must be identical to those considered in the prior proceedings." (Citations omitted; internal quotation marks omitted.) Mazziotti v. Allstate Insurance Company, 240 Conn. 799,812-13, 695 A.2d 1010 (1997), citing Crochiere v. Board ofEducation, 227 Conn. 333, 345, 630 A.2d 1027 (1993). In the present action, the plaintiffs had no personal interest in the condominiums at Woodhaven. The values of the plaintiffs' units at Lakewood were not an issue in the Ghent proceeding and therefore the plaintiffs cannot assert collateral estoppel against the, city in this action. See Labbe v. Hartford Pension Commission,239 Conn. 168, 186-7, 682 A.2d 489 (1996). Further, the agreement of the owners of certain Woodhaven units and the city regarding the value of those Woodhaven units, which resolved litigation between those parties, is of little probative value to the court in determining the fair market value of the Lakewood units. In conducting his valuation of the Lakeview units under the comparable sales approach, the assessor was entitled to look to the actual 1980 sales prices of the Woodhaven units as evidence of the fair market value of Lakeview units as of 1980. It should further be noted that the assessor did not have the Ghent values available to him, in that the stipulated judgment as to the Woodhaven units was entered into in March 1995, over seven years after the assessor added the Lakewood condominium units to the 1987 grand list.
As an additional part of their collateral estoppel argument, the plaintiffs point out that subsequent to the 1980 revaluation date the board of tax review reduced the valuation of several units in Woodhaven as shown in Kloss' appraisal report. We fail to see the analogy between the assessor's use of Woodhaven comparable sales in 1980 to value Lakewood units in 1980 and the board of tax review's action lowering the assessment of some Woodhaven units subsequent to 1980. The legislative mandate to the assessor is to determine the value of real estate on the basis of fair market value, not on the actions of the board of CT Page 5612 tax review.
In a tax appeal under General Statutes § 12-117a, the taxpayer bears the burden of establishing that the assessor has over assessed its property. Ireland v. Wethersfield,242 Conn. 550, 556, 698 A.2d 888 (1997). We must arrive at our own conclusions as to the value of the property by weighing the opinion of the appraisers, the claims of the parties in light of all the circumstances in evidence bearing on value, and our own general knowledge of the elements going to establish value. Id., 556-57.
In light of the extreme fluctuations over the years in the condominium market, we recognize that it is a difficult task to determine in 1998 the value of condominiums built in 1987 with a revaluation date of 1980. In this case, however, we find that the plaintiffs have not sustained their burden of showing that their properties have been overassessed on the grand list of October 1, 1994, 1995, 1996 and 1997. We do not find the plaintiffs' analysis, based upon sales in 1990-1991, a 1995 stipulated judgment, and sales/assessment ratios that include sales data on single family homes, to be persuasive, in light of the fact that there were 1980 comparable sales available that support the assessor's valuations. Based upon the evidence presented, we do not find the assessor's valuations of the Lakewood units as of the October 1, 1980 revaluation date to be excessive. We therefore dismiss the plaintiffs' appeal from the board of tax review.
Accordingly, judgment may enter for the defendant city of Waterbury without costs to either party.
Arnold W. Aronson, J. Judge Trial Referee