[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION RE: MOTION TO TERMINATE STAY OF EXECUTION
In this marriage dissolution action, the plaintiff Susan Johnson (formerly, Susan Pospisil) has moved pursuant to Practice Book (1998) § 61-11 [formerly, § 4046], to terminate the automatic stay of execution which was entered when the defendant, Edward Pospisil appealed the trial court's denial of his motion to re-open the Stipulation for Judgment entered on August 2, 1995. For the reasons stated below the plaintiff's motion for termination of the automatic stay is denied.
A review of the record reveals the following. On September 14, 1993, the Plaintiff filed a complaint seeking a dissolution of her marriage, joint custody of her children, child support, alimony and possession of other marital assets. The defendant contested the dissolution. By order of the court, January 18, 1994, custody of the minor children was awarded to the defendant.[1] On August 2, 1995, a Stipulation for Judgment was negotiated and signed by both the plaintiff and the defendant. With respect to child support and alimony, the plaintiff agreed to pay the defendant by way of set off, child support in an amount equal to the defendant's alimony obligation to her. Among other things, the plaintiff further agreed that the plaintiff's entitlement to a portion of the defendant's pension would be met by giving to the plaintiff her portion in one lump sum as permanent alimony within five days of the defendant's receipt of his pension; or in the event that Hartford began honoring QDRO's, the defendant would sign a QDRO so that the plaintiff could receive her share of the pension directly. On August 27, 1998, the plaintiff's attorney received notification that the City of Hartford had begun honoring QDRO's. In a motion filed September 21, 1998, the plaintiff sought to implement the pension division. CT Page 2650
The defendant filed a motion dated July 27, 1998, seeking to re-open the judgment alleging fraud and mutual mistake in the signing of the August 2, 1995 Stipulation for Judgement. A hearing was held on October 28, 1998, in accordance with Practice Book § 61-11. At the hearing, the defendant argued as the basis of his fraud claim, that the knowledge on the part of the plaintiff that she was to be married two months after the dissolution of the Pospisil marriage was material to the defendant's ability to negotiate his alimony obligations. The defendant argued as the basis of his mutual mistake claim, that the parties failed to factor into the negotiations over his pension, the plaintiff's entitlement to social security benefits.
The plaintiff objected to the re-opening of the judgment. The plaintiff denied that her failure to disclose her future intentions to marry, absent any questions about it, could be considered fraud. Also, the plaintiff denied that there was any mutual mistake. If there was any mistake at all, the plaintiff claimed, it was solely on the part of the defendant. The plaintiff also suggested that the true motivation behind the defendant's motion to re-open was her refusal to subordinate her mortgage on the former family home so that the defendant could refinance it as well as her filing of a motion to hold the defendant in contempt for his failure to satisfy other financial obligations arising out of the Stipulation for Judgment. Finally the plaintiff sought an award of attorneys fees to cover her inability to defend the post-judgment motion.
Upon conclusion of the hearing, the court, Steinberg, J.,
entered judgement for the plaintiff and denied the defendants request to re-open the judgment[2]. The court found that no fraud existed, no mutual mistake occurred and the defendant owed the plaintiff attorney's fees. At the same time the judge entered an order that the defendant was to deliver to the plaintiff, within one week, a signed QDRO document.
On November 9, 1998, the plaintiff filed a post judgment motion for contempt against the defendant for his failure to sign and deliver the ordered QDRO document. On November 17, 1998, the defendant filed an appeal of the trial courts denial of his motion to re-open. As a result of his filing of the appeal, a stay of proceedings took effect. In a motion dated December 19, 1998, the plaintiff sought relief of the stay in order to have the pension division executed and in order to collect the payment CT Page 2651 of attorney's fees as ordered by the court on October 28, 1998.
Under Practice Book § 61-11, if a trial judge is of the opinion that an extension to appeal is sought or an appeal is taken only for delay or that the due administration of justice so requires that judge may at any time, upon motion and hearing, order that the stay be terminated. It is within the trial court's discretion to determine whether due administration of justice warrants the termination of the stay of execution. NortheasternGas Transmission Co. v. Benedict, 139 Conn. 36, 40, 89 A.2d 379
(1952); North American Bank Trust v. Sulton Realty, Superior Court, judicial district of Fairfield, at Bridgeport, Docket No. 292441 (April 24, 1995, Thim, J.). Principles pertinent to "the due administration of justice" include: (1) the likelihood that the defendant will prevail on appeal (2) the irreparability of the injury to be suffered from the execution of the judgment; (3) the effect of the stay upon the other parties to the proceedings; and (4) the public interest involved. Griffin Hospital v.Commission on Hospitals, 196 Conn. 451, 456-58, 493 A.2d 229
(1985), citing Northeastern Gas Transmission Co. v. Benedict, supra, 139 Conn. 42-43.
1. Likelihood of the Defendant Prevailing on Appeal
It is the opinion of this court that the trial court's decision was reasonable and rational in light of existing law. After reviewing counsel briefs and hearing testimony in this case, the trial court denied the defendants motion to re-open the judgment for the following reasons:
Based upon the evidence brought before the Court at this hearing the Court does not find that fraud existed. Fraud in this case would have to do with a future intent. The Court has dealt with future intent in many ways. And it does appear to this court, and from my reading of appellate decisions, to fall short of fact. My thinking moves to questions of anticipated inheritance and their impact on decisions of the family court. Although that decision that it could have, could apply, future anticipations might have an impact, it was settled clearly, to the relief of both the bar and the bench dealing with family matters, that future intent does not reach the effect of fact, that too many things can change. So there is no evidence presented to this Court to establish that fraud exists. CT Page 2652
 With regard to the social security, there is no mutual mistake involved in that. It was a very confusing quagmire of facts, one that was not known to either of the parties: I find no mutual mistake in existence.
 I do, however, find that the refusal of the defendant to sign the documentation required by the judgment, which again, was a judgment entered into in 1995, was inexcusable; that those documents should have been signed on a voluntary basis; that the need to bring a party in to compel the signing was a way of visiting what was and what remains to this day to be obvious anger on the part of Edward Pospisil against Susan and everyone else involved in this case.
 The Court finds attorneys fees are due in the total amount of thirty-nine hundred and ninety-four dollars and fifty-three cents. Pospisil v. Pospisil, 106-07, October 28, 1998 (Steinberg, J.).
While this court is mindful that there is a possibility that the Appellate Court could choose, in reviewing the defendant's claims, to reverse the denial of the motion to re-open the judgment, the likelihood of that happening is slight, particularly in light of the fact that the standard for appellate review is abuse of discretion by the trial court. Mazziotti v.Allstate Insurance Co., 240 Conn. 799, 809, 695 A.2d 1010 (1997), citing In re Baby Girl B., 224 Conn. 263, 294-95, 618 A.2d 1
(1992) ("We do not undertake a plenary review of the merits of a decision of the trial court to grant or to deny a motion to open a judgment. The only issue on appeal is whether the trial court has acted unreasonably and in clear abuse of its discretion.") And, "[i]n determining whether the trial court abused its discretion, (the Appellate Court] must make every reasonable presumption in favor of its action." Id., 809, citing State v.Bitting, 162 Conn. 1, 11, 291 A.2d 240 (1971). Thus the likelihood that the defendant would prevail on appeal is slight.
2. Irreparable Injury
The plaintiff claims in her brief that "[i]n the event that the QDRO is not executed as ordered by the court, there is a danger that, in the event of the Defendant's death, the plaintiff may lose the benefit of her interest in the Defendant's pension as provided by the judgment entered in this matter on August 2, 1995 and the court's order of October 28, 1998." Granting the CT Page 2653 termination would protect the plaintiff from the danger of losing her interest through the defendant's death. By the same token, if the QDRO was signed and then the plaintiff lost her life, the defendant would be in the same position as the plaintiff. That being said, there was no testimony or evidence presented by either party that there was any imminent danger of the other party dying.[3]
The plaintiff also claims that she is entitled to court ordered attorney's fees and that the stay should not prevent her collection of them. The plaintiff in her brief dated December 10, 1998, argues that the counsel fees that were awarded on October 28, 1998, were not part of the underlying judgment, but were awarded as support[4] so that she could defend herself against the post judgment motion. However, a review of the October 28, 1998 transcript indicates that the fees were not awarded as support but were ordered in connection with the court's finding of the defendant in contempt.[5] As such, the court ordered attorneys fees are part of the proceedings that were stayed in accordance with Practice Book § 61-11. Neither party is irreparably harmed by the continuation of the automatic stay and, therefore, the lack of irreparable harm weighs in favor of the continuation of the stay.
3. Effect of the Stay Upon Other Parties
There are no third parties or others, such as children, that may be impacted by the continuation of the automatic stay. Therefore this factor weighs in favor of the continuation of the stay.
4. Public Policy Concerns
There are few, if any, public policy concerns at issue in this case. The stay arose out of an appeal of a divorce decree, a matter private in nature. The only persons affected by the judgment as it relates to the pension and the attorneys fees are the plaintiff and the defendant.
Having considered all four principles, it is the opinion of this court that the due administration of justice does not require that the stay in this case be terminated. Neither party is likely to suffer irreparable harm from the stay of the court's denial of the motion to reopen and order to sign the QDRO and award of attorney's fees. No other parties are effected by the CT Page 2654 stay and there are no public policy considerations that weigh against leaving the stay in place. Although the defendant is unlikely to succeed on appeal that alone is not sufficient reason to terminate the stay.
Accordingly, the motion to terminate the automatic stay is hereby denied.
Zarella, J.