******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.
******************************************************

# VILLAGES, LLC *v.* LORI LONGHI
## (AC 40263)

Keller, Elgo and Eveleigh, Js.

*Syllabus*

The plaintiff commenced the present action against the defendant, a member of the Enfield Planning and Zoning Commission, for intentional fraudulent misrepresentation and intentional tortious interference with a business expectancy after the commission had denied zoning applications filed by the plaintiff. The defendant had had a prior falling out with one of the plaintiff's owners, T, and the trial court found that the defendant was biased against T's husband, who represented the plaintiff at the hearing before the zoning commission, and that the defendant had engaged in an ex parte communication regarding the plaintiffs zoning applications, took part in the hearing on the applications and played a significant role in the deliberations. After the commission denied the plaintiff's applications, the plaintiff appealed to the Superior Court, which sustained the appeals. That court determined that the defendant's ex parte communication was not harmless, that the defendant had dominated the commission's meeting in order to have a major effect on the deliberations and subsequent votes, and that the defendant had been clearly and egregiously biased. Thereafter, the plaintiff filed the present action alleging that the defendant improperly had engaged in ex parte communications with respect to the plaintiff's zoning applications and improperly had participated in the public hearing in which the applications were denied. The plaintiff filed a motion for partial summary judgment, arguing that the defendant was collaterally estopped from relitigating the issue of whether she was impermissibly biased against the plaintiff during the commission hearings. The defendant filed a separate motion for summary judgment, arguing that there was no genuine issue of material fact and that she was entitled to judgment as a matter of law because the plaintiff could not satisfy the elements of its causes of action. The trial court denied the plaintiff's motion for partial summary judgment and granted the defendant's motion for summary judgment and rendered judgment thereon in favor of the defendant, from which the plaintiff appealed to this court. *Held*:

1. The trial court properly denied the plaintiff's motion for partial summary judgment and concluded that the defendant was not collaterally estopped from disputing liability: the defendant was not a party to the prior action in either her individual or official capacity, and although the commission and the defendant shared a similar interest in disproving the same facts in the prior action, namely, that the defendant had participated in the zoning appeal proceedings while impermissibly biased, they were not parties in privity because they did not have an identity of interest so as to share the same legal right, as the first cause of action was a zoning appeal wherein the commission's legal rights derived from its status as a quasi-judicial body whose decisions were reviewed on appeal, and the present tort action was brought against the defendant as a private individual; moreover, the defendant did not have a full and fair opportunity to litigate the issue during the zoning appeal because even though she retained private counsel for the purposes of a deposition and testified at the trial, she was not actually a party to that action such that collateral estoppel did not preclude her from disputing liability.

2. The plaintiff could not prevail on its claim that the trial court improperly granted the defendant's motion for summary judgment with respect to its fraudulent misrepresentation claim: the trial court properly determined that the plaintiff failed to present evidence that would sufficiently support the essential elements of the claim for fraudulent misrepresentation, because even if the plaintiff had established that the defendant's participation in the zoning proceedings while biased constituted a false representation, the plaintiff did not offer any evidence as to how the defendant's participation in the proceedings while biased against the plaintiff was intended to or in fact induced the plaintiff to act on that purportedly false representation.

3. The trial court properly granted the defendant's motion for summary judgment with respect to the plaintiff's claim of tortious interference with business expectancies, as no business relationship existed between the plaintiff and the commission: the plaintiff's claim that, as an applicant, it had a business relationship with the commission, as an honest legal forum, was unavailing and was not supported by any legal authority, and in the absence of any allegation that the defendant interfered with a contractual relationship or a relationship involving the reasonable probability that it would have entered into a contract or made a profit, the defendant met her burden of showing the absence of any genuine issue of material fact and that she was entitled to judgment as a matter of law.

Argued September 25, 2018–officially released January 15, 2019

*Procedural History*

Action to recover damages for, inter alia, fraud, and for other relief, brought to the Superior Court in the judicial district of Hartford, where the court, *Wiese, J.*, granted the defendant's motion to dismiss and rendered judgment thereon, from which the plaintiff appealed to this court, which reversed the judgment of the trial court and remanded the case for further proceedings; thereafter, the court, *Hon. A. Susan Peck*, judge trial referee, denied the plaintiff's motion for partial summary judgment and granted the defendant's motion for summary judgment and rendered judgment thereon, from which the plaintiff appealed to this court. *Affirmed.*

*Gwendolyn S. Bishop*, for the appellant (plaintiff).

*Kristan M. Maccini*, for the appellee (defendant).

*Opinion*

ELGO, J. The plaintiff, Villages, LLC, appeals from the summary judgment rendered by the trial court in favor of the defendant, Lori Longhi, who at all relevant times was a member of the Enfield Planning and Zoning Commission (commission). The plaintiff claims on appeal that the court improperly concluded that (1) the defendant was not collaterally estopped from disputing liability, and (2) the defendant was entitled to summary judgment on the plaintiff's claims for fraudulent misrepresentation and intentional interference with a business expectancy. We affirm the judgment of the trial court.

The parties appear before this court for the third time. The underlying facts previously were set out in *Villages, LLC* v. *Longhi*, 166 Conn. App. 685, 142 A.3d 1162, cert. denied, 323 Conn. 915, 149 A.3d 498 (2016). "In May, 2009, the plaintiff filed an application for a special use permit and an application to develop an open space subdivision for residential housing on property it owned in Enfield. . . . The commission held a public hearing on the plaintiff's applications on July 9, 2009, July 23, 2009, September 3, 2009, and October 1, 2009, and closed the public hearing on October 1, 2009. . . . On October 15, 2009, the commission met and voted to deny both applications. . . .

"The plaintiff filed an appeal with respect to each application (zoning appeals). In its appeals, the plaintiff alleged that the commission illegally and arbitrarily predetermined the outcome of each of its applications prior to the public hearing and was motivated by improper notions of bias and personal animus when it denied each of the applications. . . .

"Following a trial, the court, *Hon. Richard M. Rittenband*, judge trial referee, found that the plaintiff's allegations of bias and ex parte communication arose from the actions of [the defendant], a member of the commission. More specifically, the court found that [the defendant] took part in the hearing on the plaintiff's applications, played a significant role in the deliberations, and voted to deny the plaintiff's applications. [The defendant] had been a social friend of one of the plaintiff's owners, Jeannette Tallarita, and her husband, Patrick Tallarita. . . . There was a falling out among the friends, and the court found that [the defendant] was biased against Patrick Tallarita, who represented the plaintiff at the hearing before the commission. *The court also found that [the defendant] engaged in an ex parte communication regarding the applications. . . .*

"The court found two instances of conduct by the defendant that gave rise to the plaintiff's claim of bias against her, only one of which was relevant to the zoning appeals. . . . In the incident described by the court, the defendant had stated that she wanted [Patrick Tallarita] to suffer the same fate of denial by the commis-

sion that she had suffered. . . . At trial, Anthony DiPace testified that [the defendant] had stated to him that the commission, when it previously considered an application that she had submitted, had screwed her and treated her unfairly when it denied that application. She was unhappy with [Patrick] Tallarita, who was then mayor, because he did not intervene on her behalf. She stated in the presence of DiPace that she wanted [Patrick] Tallarita to suffer the same fate, i.e., that the commission deny the plaintiff's applications. [Patrick] Tallarita did not become aware of [the defendant's] statement regarding the fate of the plaintiff's applications until after the commission had closed the public hearing [on the plaintiff's applications]. The court found that [the defendant's] comments were blatantly biased [against Patrick] Tallarita and should not be tolerated. The court also found that it had not been possible for the plaintiff to bring [the defendant's] comments regarding [Patrick] Tallarita to the attention of the commission because he learned of them after the hearing had closed and the commission had denied the plaintiff's applications.

"Credibility was a deciding factor in the court's decision regarding [the defendant's] ex parte communication. [Patrick] Tallarita, DiPace, and Bryon Meade testified during the trial. The court found that each of the men was a credible witness. [The defendant] also testified at trial, but the court found that her testimony was filled with denials of the allegations and concluded that her comments did not ring true. The court found that Meade, a representative of the Hazardville Water Authority, testified with confidence that [the defendant] had met with him in person regarding the plaintiff's applications during the first week of October, 2009. [The defendant] testified, however, that Meade must have been confused because she met with him regarding another property. The court stated that [the defendant's] testimony was just not credible.

"In addressing the plaintiff's claim that [the defendant] improperly engaged in ex parte communications with Meade, the court noted that [o]ur law clearly prohibits the use of information by a municipal agency that has been supplied to it by *a party* to a contested hearing on an ex parte basis. . . . The court found that it was clear that [the defendant] had an ex parte communication with Meade. Once the plaintiff had proven that the ex parte communication had occurred, the burden shifted to the commission to demonstrate that such communication was harmless. . . . The court found that the commission had not met its burden to prove that [the defendant's] ex parte communication was harmless. . . .

"The court reviewed the transcript of the commission's October 15, 2009 meeting when it considered the plaintiff's applications. It found that the transcript was

twenty-three pages long and that [the defendant's] comments appeared on every page but one, and that on most pages, [the defendant's] comments were the most lengthy. Her comments raised many negative questions about the plaintiff's applications. Moreover, in offering her comments, she cited her experience as an appraiser. The court found that [the defendant] dominated the meeting and that she intended to have a major effect on the commission's deliberations and subsequent votes. The court found clear and egregious bias on [the defendant's] part, and that her impact on the commission's deliberations and votes alone were reason to sustain the plaintiff's appeals. . . .

"Judge Rittenband concluded that, on the basis of the bias [the defendant] demonstrated against the plaintiff and *her ex parte communication with Meade*, along with her biased, aggressive, and vociferous arguments against the applications on October 15, 2009, the commission's action was not honest, legal, and fair. The court therefore sustained the plaintiff's appeals and remanded the matter to the commission for further public hearings . . . . The commission appealed, and this court affirmed the judgments of the trial court. . . . The commission's appeals to our Supreme Court were dismissed. . . .

"The plaintiff commenced the present action on October 1, 2012. The two count complaint against the defendant alleged intentional fraudulent misrepresentation and intentional tortious interference with [a] business expectancy. The plaintiff alleged that it owns land in Enfield and that it had filed certain applications with the commission, seeking to develop the land. At all times relevant, the defendant was a member of the commission and *engaged in ex parte communication with respect to the plaintiff's applications*, yet participated in the public hearing in which the commission denied the plaintiff's applications.

"The defendant denied the material allegations of the complaint and alleged three special defenses as to each count, including that the action was barred by the doctrines of governmental immunity and absolute immunity. The plaintiff denied each of the special defenses.

"In December, 2013, the defendant filed a motion that the court either dismiss the plaintiff's cause of action or render summary judgment in her favor." (Citations omitted; emphasis in original; footnotes omitted; internal quotation marks omitted.) Id., 688–93. In January, 2014, the plaintiff filed a motion for partial summary judgment as to liability only, arguing that the defendant was collaterally estopped from relitigating the issue of whether she was impermissibly biased against the plaintiff or whether she gathered ex parte evidence. As such, the plaintiff argued, there was no genuine issue of material fact as to the defendant's liability for its claims of tortious interference with a business expec-

tancy and fraudulent misrepresentation.

In its May 7, 2014 memorandum of decision, the court granted the defendant's motion to dismiss, but declined to address either the plaintiff's motion for partial summary judgment or the defendant's motion for summary judgment on the ground that it lacked subject matter jurisdiction. "The court concluded that the commission was acting in a quasi-judicial capacity when it considered the plaintiff's applications and, therefore, its members were protected by the litigation privilege, a subset of absolute immunity." Id., 695–96.

"The plaintiff appealed, claiming that the court erred in determining that it lacked subject matter jurisdiction . . . ." Id., 696. This court reversed the decision of the trial court, holding that qualified immunity, rather than absolute immunity, applied to the defendant, and remanded the case for further proceedings. Id., 707. On remand, in its March 6, 2017 memorandum of decision, the trial court denied the plaintiff's motion for partial summary judgment and granted the defendant's motion for summary judgment. From that judgment, the plaintiff now appeals.

I

The plaintiff's first claim on appeal is that the court erroneously denied its motion for partial summary judgment because the court improperly determined that the defendant was not collaterally estopped from disputing liability. Specifically, the plaintiff argues that the court erroneously concluded that the doctrine of collateral estoppel does not apply because it wrongly determined that the defendant and the commission were not in privity.[1] We disagree.

We begin by setting forth the applicable standard of review. "Application of the doctrine of collateral estoppel is a question of law over which we exercise plenary review." *Lighthouse Landings, Inc.* v. *Connecticut Light & Power Co.*, 300 Conn. 325, 345, 15 A.3d 601 (2011).

"The fundamental principles underlying the doctrine of collateral estoppel are well established. The common-law doctrine of collateral estoppel, or issue preclusion, embodies a judicial policy in favor of judicial economy, the stability of former judgments and finality. . . . Collateral estoppel, or issue preclusion, is that aspect of res judicata which prohibits the relitigation of an issue when that issue was actually litigated and necessarily determined in a prior action between the same parties upon a different claim. . . . For an issue to be subject to collateral estoppel, it must have been fully and fairly litigated in the first action. It also must have been actually decided and the decision must have been necessary to the judgment. . . ." (Citation omitted; internal quotation marks omitted.) *MacDermid, Inc.* v. *Leonetti*, 328 Conn. 726, 739, 183 A.3d 611 (2018).

It is well settled that "[c]ollateral estoppel may be invoked against a party to a prior adverse proceeding or against those in privity with that party. . . . While it is commonly recognized that privity is difficult to define, the concept exists to ensure that the interests of the party against whom collateral estoppel is being asserted have been adequately represented because of his purported privity with a party at the initial proceeding. . . . A key consideration in determining the existence of privity is the sharing of the same legal right by the parties allegedly in privity." (Citations omitted; internal quotation marks omitted.) *Aetna Casualty & Surety Co.* v. *Jones*, 220 Conn. 285, 303–304, 596 A.2d 414 (1991).

In the present case, the court determined that the defendant and the commission were not in privity, relying on the fact that "[t]he defendant herein is being sued in her individual capacity rather than in her official capacity as a member of the [c]ommission." The trial court cited to this court's decision in *C & H Management, LLC* v. *Shelton*, 140 Conn. App. 608, 59 A.3d 851 (2013), in which the issue was whether the parties were in privity for res judicata to apply. In that case, the first action was commenced by the plaintiff, C & H Management, LLC, seeking a writ of mandamus to compel the city of Shelton and Robert Kulacz, the city's engineer, to approve the plaintiff's application for the construction of a single-family house. Id., 610. The plaintiff then brought the second action against the city and Kulacz in his individual capacity. Id. This court determined "that Kulacz, having been sued in his individual capacity . . . is not the same as Kulacz the municipal official who was sued in the mandamus action, nor is the individual defendant Kulacz in privity with Kulacz the municipal official." Id., 614.

Given our decision in *C & H Management, LLC*, we conclude that the defendant in the present action is not bound by the prior action in which she was not a party in her individual or official capacity. Further, our Supreme Court has stated that "[i]n determining whether privity exists, we employ an analysis that focuses on the functional relationship between the parties. Privity is not established by the mere fact that persons may be interested in the same question or in proving or disproving the same set of facts. Rather, it is, in essence, a shorthand statement for the principle that collateral estoppel should be applied only when there exists such an identification in interest of one person with another as to represent the same legal rights so as to justify preclusion." *Mazziotti* v. *Allstate Ins. Co.*, 240 Conn. 799, 814, 695 A.2d 1010 (1997).

In *Aetna Casualty & Surety Co.* v. *Jones*, supra, 220 Conn 305, our Supreme Court determined that the parties were in privity where they shared the same legal right to recover damages under a single contract. In

*Mazziotti* v. *Allstate Ins. Co.*, supra, 240 Conn. 817, our Supreme Court determined that the parties did not share the same legal right and thus were not in privity where the first cause of action was an action in tort for the negligent operation of a motor vehicle and the second cause of action was an action in contract and involved the obligations of an insurance carrier. Our Supreme Court reasoned that "although [the insurer's] contractual liability is premised in part on the contingency of the tortfeasor's liability, they do not share the same legal right. The commonality of interest in proving or disproving the same facts is not enough to establish privity." (Internal quotation marks omitted.) Id. Like the parties in *Mazziotti*, although the commission and the defendant have a similar interest in disproving the same facts, they do not have an identity of interest so as to share the same legal right. The first cause of action in which the commission was a party was a zoning appeal. As such, the commission's legal rights derived from its status as a quasi-judicial body whose decisions were reviewed on appeal. In the present action, the defendant is being sued in tort as a private individual.

Additionally, our Supreme Court has recognized that "[w]henever collateral estoppel is asserted, but especially in those cases where . . . the doctrine of privity is raised, the court must make certain that there was a full and fair opportunity to litigate. The requirement of full and fair litigation ensures fairness, which is a 'crowning consideration' in collateral estoppel cases." *Aetna Casualty & Surety Co.* v. *Jones*, supra, 220 Conn. 306. The plaintiff relies on *Doran* v. *First Connecticut Capital, LLC*, 143 Conn. App. 318, 70 A.3d 1081, cert. denied, 310 Conn. 917, 76 A.3d 632 (2013), to support the proposition that the defendant had a "full and fair opportunity to litigate the question of whether or not she was impermissibly biased against the [plaintiff] during the [zoning] proceedings [and] whether or not she collected evidence outside the record *ex parte*." The plaintiff's reliance on *Doran*, however, is misplaced.

In *Doran*, this court concluded that "[t]he plaintiff had a full and fair opportunity to litigate the question of whether the mortgage and note were in default . . . during the foreclosure action" *where the defendant was a party* and filed a disclosure of no defense to the complaint. Id., 322. The plaintiff argues that just as the plaintiff in *Doran* had the opportunity to litigate the first foreclosure and chose not to, in the present case, the defendant "not only had the opportunity to defend the allegations concerning her actions as a commission member, [but] she did vigorously defend the allegations concerning her conduct during the prior action." The plaintiff contends that the defendant was able to defend against the allegations in the zoning appeal in which she was not a party because she hired private counsel when her deposition was taken, she testified at trial, and the commission objected to the taking of additional

evidence on the issue of bias. We are not persuaded. The defendant's ability to defend against the allegations in the zoning appeal where she was not a party plainly differs from that of the plaintiff in *Doran* who was a party in both actions and chose to file a disclosure of no defense in the first action. Accordingly, we conclude that the defendant is not barred by the doctrine of collateral estoppel from disputing liability because the defendant in the present case was not in privity with the commission and the defendant did not have a full and fair opportunity to litigate during the zoning appeal in which she was not a party.

## II

The plaintiff next claims that the court improperly granted the defendant's motion for summary judgment. We disagree.

"The standard of review of a trial court's decision granting summary judgment is well established. Practice Book § 17-49 provides that summary judgment shall be rendered forthwith if the pleadings, affidavits and any other proof submitted show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. In deciding a motion for summary judgment, the trial court must view the evidence in the light most favorable to the nonmoving party. . . . The party moving for summary judgment has the burden of showing the absence of any genuine issue of material fact and that the party is, therefore, entitled to judgment as a matter of law. . . . Our review of the trial court's decision to grant the defendant's motion for summary judgment is plenary. . . . On appeal, we must determine whether the legal conclusions reached by the trial court are legally and logically correct and whether they find support in the facts set out in the memorandum of decision of the trial court." (Internal quotation marks omitted.) *Cefaratti* v. *Aranow*, 321 Conn. 637, 645, 138 A.3d 837 (2016).

In its complaint, the plaintiff presented two claims. First, it alleged that the defendant "continuously intentionally misrepresented to the plaintiff that she was a neutral, honest, fair and unbiased member of the [c]ommission." Second, it alleged that the defendant "intentionally and tortiously interfered with the relationship between the plaintiff and the [c]ommission and tortiously interfered with the plaintiff's expectation that it was investing time money and effort into proceedings that were fair, honest and legal proceedings." We address each of the plaintiff's claims in turn.

## A

The first claim in the plaintiff's complaint is fraudulent misrepresentation.[2] "The essential elements of an action in common law fraud, as we have repeatedly held, are that: (1) a false representation was made as a statement of fact; (2) it was untrue and known to be

untrue by the party making it; (3) it was made to induce the other party to act upon it; and (4) the other party did so act upon that false representation to his injury. . . . Under a fraud claim of this type, the party to whom the false representation was made claims to have relied on that representation and to have suffered harm as a result of the reliance." (Internal quotation marks omitted.) *Sturm* v. *Harb Development, LLC*, 298 Conn. 124, 142, 2 A.3d 859 (2010). In its memorandum of decision, the court concluded that the plaintiff "failed to present evidence that would sufficiently support the essential elements of the claim for fraudulent misrepresentation that the defendant knowingly made misrepresentations to the plaintiff with the intention of inducing the plaintiff to rely on such misrepresentations." We agree.

The plaintiff argues that the defendant made a false representation "by continuously representing to the plaintiff that she was an honest, unbiased decision maker by sitting in judgment on the commission concerning the applications . . . ." Assuming, arguendo, that the plaintiff has presented sufficient evidence to support the first two elements of fraud, i.e., that her participation in the proceedings while biased constituted a false representation, the plaintiff has not established how the defendant's participation in the proceedings while biased against the plaintiff was intended to induce the plaintiff to act on that representation or caused the plaintiff to act on that representation.

In its brief, the plaintiff asserts that "the fraudulent misrepresentation perpetrated by [the defendant led] the plaintiff to expend monies on application fees, engineering fees, interest on mortgages and [attorney's] fees all related to the process before the [c]ommission . . . ." The plaintiff went before the commission to seek the approval of two applications on its own initiative. Again, even if we were to assume that the defendant's participation in the proceedings while biased constituted a false representation, the plaintiff has proffered no evidence demonstrating that the defendant's false representation intended to induce, or, in fact, caused the plaintiff to pursue approval of its applications before the commission. Accordingly, we agree with the trial court that the plaintiff has failed to present evidence that would sufficiently support the essential elements of the claim for fraudulent misrepresentation.

B

The second claim in the plaintiff's complaint is tortious interference with a business expectancy. "It is well established that the elements of a claim for tortious interference with business expectancies are: (1) a business relationship between the plaintiff and another party; (2) the defendant's intentional interference with the business relationship while knowing of the relationship; and (3) as a result of the interference, the plaintiff suffers actual loss." *Hi-Ho Tower, Inc.* v. *Com-Tronics,*

*Inc.*, 255 Conn. 20, 27, 761 A.2d 1268 (2000). "It is not essential to such a cause of action that the tort have resulted in an actual breach of contract, since even unenforceable promises, which the parties might voluntarily have performed, are entitled to be sheltered from wrongful interference." *Jones* v. *O'Connell*, 189 Conn. 648, 660, 458 A.2d 355 (1983). "It does not follow from this, however, that a plaintiff may recover for an interference with a mere possibility of his making a profit. On the contrary, wherever such a cause of action as this is recognized, it is held that the tort is not complete unless there has been actual damage suffered. . . . To put the same thing another way, it is essential to a cause of action for unlawful interference with business that it appear that, except for the tortious interference of the defendant, there was a reasonable probability that the plaintiff would have entered into a contract or made a profit." (Citations omitted.) *Goldman* v. *Feinberg*, 130 Conn. 671, 675, 37 A.2d 355 (1944).

The plaintiff argues that the business relationship with which the defendant interfered was the relationship between the plaintiff and the commission as applicant and "honest legal forum." The plaintiff further argues that it "had reasonable expectations of the [c]ommission that it was what it appeared to be, an honest and legal forum, and in reliance on those expectations [the plaintiff] spent resources including substantial application fees and engineering fees to come before it." In its memorandum of decision, the court concluded that the plaintiff presented no evidence that a business relationship existed between the commission and the plaintiff.[3] We agree.

The plaintiff does not cite to any legal authority, and we are aware of none, indicating that a business relationship exists between an applicant and a zoning commission. Our review of Connecticut case law indicates that a business expectation arises out of a contract or an ongoing business relationship between parties and a business relationship, therefore, involves prospective profits. See, e.g., *Hi-Ho Tower, Inc.* v. *Com-Tronics, Inc.*, supra, 255 Conn. 31–35 (business expectation amounted to existing or prospective contractual or business relationships between customers and defendant). The plaintiff does not argue that the defendant interfered with a contractual relationship or a relationship involving the reasonable probability that it would have entered into a contract or made a profit. Instead, it argues that the defendant interfered with the relationship between it and the commission, and the business expectation interfered with was the expectation that the commission was an honest legal forum.

The plaintiff relies exclusively on dicta from *Kelley Property Development, Inc.* v. *Lebanon*, 226 Conn. 314, 627 A.2d 909 (1993), to support its assertion that a business relationship existed between the plaintiff and

the commission. In *Kelley*, where a real estate developer brought a civil rights action against town officials after his application for subdivision approval was denied, "[t]he principal issue [was] whether the Connecticut constitution affords a monetary remedy for damages to persons whose state due process rights have allegedly been violated by local zoning officials." Id., 315. In that case, our Supreme Court concluded that it "should not construe our state constitution to provide a basis for the recognition of a private damages action for injuries for which the legislature has provided a reasonably adequate statutory remedy" by enacting General Statutes § 8-8, which provides for appellate appeal of zoning board decisions. Id., 339. The court added, "even if such administrative relief were deemed to be inadequate, a proposition to which we do not subscribe, [the plaintiff] might have pursued other actions to protect his interests. He might, for example, have brought an action for intentional interference with [a] business expectancy, or for equitable relief, such as an action for an injunction against the defendants' allegedly wrongful conduct." (Footnote omitted.) Id., 340–41. By citing to nothing other than *Kelley* to support its position, the plaintiff is essentially asking us to conclude, without the support of existing authority, that an element of the cause of action is satisfied because our Supreme Court, in dicta,[4] mentioned that the defendant in that case "might . . . have brought an action for intentional interference with [a] business expectancy . . . ." Id., 340. We are not willing to so hold. Accordingly, we conclude that no business, relationship existed between the defendant and the commission and, therefore, we agree with the trial court that the defendant has met her burden of showing the absence of any genuine issue of material fact and that she is entitled to judgment as a matter of law.

The judgment is affirmed.

In this opinion the other judges concurred.

[1] The plaintiff also argues that the court erroneously concluded that the defendant was not collaterally estopped from disputing liability because it wrongly determined that the issues in the present case were substantially different from the issues in the zoning appeals. Because we agree with the trial court that no privity existed between the commission and the defendant, we need not address this issue.

[2] In her brief, without citing to any legal authority, the defendant asserts that the plaintiff appears to be trying to advance a claim for fraudulent nondisclosure instead of fraudulent misrepresentation and that the "[p]laintiff has never alleged such a claim and same is a distinct cause of action . . . ." Because the defendant fails to set forth any law, legal analysis, or legal argument to support that assertion, it will not be addressed. See, e.g., *Electrical Contractors, Inc.* v. *Dept. of Education*, 303 Conn. 402, 444 n.40, 35 A.3d 188 (2012) ("Claims are inadequately briefed when they are merely mentioned and not briefed beyond a bare assertion. . . . Claims are also inadequately briefed when they . . . consist of conclusory assertions . . . with no mention of relevant authority . . . ." [Citations omitted; internal quotation marks omitted.]).

[3] The court also concluded that, "assuming, arguendo, that the court did find that there was a business relationship between the plaintiff and the [c]ommission, the plaintiff has still failed to show that but for the defendant's actions, the plaintiff would have succeeded in its applications before the

[c]ommission." Because we agree with the court that the plaintiff failed to establish that a business relationship existed between the plaintiff and the commission, we need not address this issue.

[4] "[D]ictum is an observation or remark made by a judge in pronouncing an opinion upon a cause, concerning some rule, principle, or application of law, or the solution of a question suggested by the case at bar, but not necessarily involved in the case or essential to its determination . . . . Statements and comments in an opinion concerning some rule of law or legal proposition not necessarily involved nor essential to determination of the case . . . are obiter dicta, and lack the force of an adjudication." (Internal quotation marks omitted.) *Electrical Contractors, Inc.* v. *Dept. of Education*, 303 Conn. 402, 421 n.16, 35 A.3d 188 (2012).

————————————————